IN THE CIRCUIT COURT OF JACKSON COUNTY
STATE OF MISSOURI

| | |
|---|---|
| MISSOURI ASSOCIATION OF SCHOOL LIBRARIANS and MISSOURI LIBRARY ASSOCIATION,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>JEAN PETERS BAKER, in her official capacity as Jackson County Prosecuting Attorney and on behalf of a Defendant Class of all Missouri Prosecuting Attorneys,<br><br>SERVE: 415 E 12th Street, 11th Floor Kansas City, MO 64106,<br><br>　　　　　　　　Defendant.[1] | Case No. |

**PETITION FOR INJUNCTIVE AND DECLARATORY RELIEF**

　　　　Plaintiffs Missouri Association of School Librarians and Missouri Library Association hereby allege for this petition for injunctive and declaratory relief:

**INTRODUCTION**

　　　　1.　　Missouri Revised Statute § 573.550 imposes criminal penalties on librarians, professionals, and a wide variety of other community members "affiliated" with public and private Missouri schools if they provide certain "explicit sexual" materials, as specifically defined in § 573.550.3(1)-(2), to students regardless of whether that material is provided inside

---

[1] Because this lawsuit alleges that a statute is unconstitutional, a copy of this filing will be served on the Missouri Attorney General, Mo. Sup. Ct. R. 87.04, and provided to the speaker of the house of representatives and the president pro tempore of the senate within fourteen days of filing. § 1.185, RSMo.

A motion to certify a defendant class is forthcoming.

or outside of a school building or school hours.[2] The law is content based and infringes upon the speech, expression, association, and due process rights of educators, community members, and particularly library professionals. Following the passage of § 573.550, schools across the state ordered the removal of books from library shelves.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over this action pursuant to §§ 478.220, 526.030, and 527.010, and Missouri Supreme Court Rules 87.01 and 92.01.

3. Venue is proper in this Court because Jackson County Prosecuting Attorney Jean Peters Baker maintains offices in Jackson County, Missouri. *See Talley v. Mo. Dep't of Corr.*, 210 S.W.3d 212, 215 (Mo. App. W.D. 2006).

## PARTIES

4. Plaintiff the Missouri Association of School Librarians (MASL) is a statewide, nonprofit, nonpartisan professional membership organization for library media specialists in Missouri schools.

5. MASL has more than 575 members residing and working in public and private school libraries serving elementary and secondary age students throughout Missouri, including members who reside and work in Jackson County, Missouri.

6. MASL's purpose is to advocate for access to school library media center services and resources for Missouri's children, develop collaborative relationships with stakeholders in the educational community, enable the use of information technologies in Missouri schools, provide opportunities for continuing professional education, and recognize significant

---

[2] All statutory citations are to Missouri Revised Statutes (2016), as updated, unless otherwise noted. Chapter 573 of the Missouri Revised Statutes is titled "Pornography and Related Offenses."

contributions to the profession and to the improvement of school library media programs in Missouri.

7. Plaintiff the Missouri Library Association (MLA) is a statewide, nonprofit, nonpartisan membership organization that has operated since 1900 to promote library service, the profession of librarianship, and cooperation among all types of libraries and organizations, including public and private school libraries.

8. MLA has more than 500 members who reside throughout Missouri, including members who reside and work in Jackson County, Missouri.

9. MLA's members are professionals who work at public libraries, academic libraries for higher education, as well as public and private elementary and secondary school libraries. MLA members who work in public libraries and academic libraries for higher education frequently partner with public and private elementary and secondary school libraries and interact with students in those schools in a professional capacity.

10. Defendant Jean Peters Baker is the Jackson County Prosecuting Attorney. She is sued in her official capacity only and as a representative of a Defendant class of county prosecuting attorneys who enforce Missouri's criminal laws, including § 573.550.

## GENERAL FACTUAL ALLEGATIONS

### *The Statute*

11. On May 12, 2022, Missouri legislators truly agreed to and finally passed Senate Bill 775, 101st Gen. Assemb., 2d Reg. Sess. (2022) (SB 775).

12. SB 775 was signed into law by Missouri Governor Mike Parson on June 30, 2022.

13. Among other changes, SB 775 enacted a new statute, Mo. Rev. Stat. § 573.550, which became effective August 28, 2022.

Electronically Filed - Jackson - Kansas City - February 16, 2023 - 09:40 PM

Defendant's Exhibit A

14. Violation of § 573.550 is a class A misdemeanor and a conviction could result in up to one year of imprisonment and/or a fine of up to $2,000. §§ 558.002; 558.011.

15. Section 573.550.1 states:

A person commits the offense of providing explicit sexual material to a student if such person is affiliated with a public or private elementary or secondary school in an official capacity and, knowing of its content and character, such person provides, assigns, supplies, distributes, loans, or coerces acceptance of or the approval of the providing of explicit sexual material to a student or possesses with the purpose of providing, assigning, supplying, distributing, loaning, or coercing acceptance of or the approval of the providing of explicit sexual material to a student.

16. Section 573.550.3(1) defines "explicit sexual material" as including:

any pictorial, three-dimensional, or visual depiction, including any photography, film, video, picture, or computer-generated image, showing human masturbation, deviate sexual intercourse as defined in section 566.010, sexual intercourse, direct physical stimulation of genitals, sadomasochistic abuse, or emphasizing the depiction of postpubertal human genitals.[3]

---

[3] Chapter 573 provides further definitions in § 573.010, which are inconsistent with those provided in Section 573.550:

Section 573.010(6) defines "[e]xplicit sexual material," to include: "any pictorial or three-dimensional material depicting human masturbation, deviate sexual intercourse, sexual intercourse, direct physical stimulation or unclothed genitals, sadomasochistic abuse, or emphasizing the depiction of postpubertal human genitals; provided, however, that works of art or of anthropological significance shall not be deemed to be within the foregoing definition."

Section 573.010(8) defines "[m]aterial," to include: "anything printed or written, or any picture, drawing, photograph, motion picture film, videotape or videotape production, or pictorial representation, or any recording or transcription, or any mechanical, chemical, or electrical reproduction, or stored computer data, or anything which is or may be used as a means of communication. Material includes undeveloped photographs, molds, printing plates, stored computer data and other latent representational objects."

Section 573.010(11) defines "Obscene" as "any material or performance if, taken as a whole: (a) Applying contemporary community standards, its predominant appeal is to prurient interest in sex; and (b) The average person, applying contemporary community standards, would find the material depicts or describes sexual conduct in a patently offensive way; and (c) A reasonable person would find the material lacks serious literary, artistic, political or scientific value."

17. Section 573.550.3(2) defines a "[p]erson affiliated with a public or private elementary or secondary school in an official capacity" as including:

> an administrator, teacher, librarian, media center personnel, substitute teacher, teacher's assistant, student teacher, law enforcement officer, school board member, school bus driver, guidance counselor, coach, guest lecturer, guest speaker, or other nonschool employee who is invited to present information to students by a teacher, administrator, or other school employee.

18. Section 573.550.3(1) provides the following exception in the definition of what constitutes "explicit sexual material":

> provided, however, that works of art, when taken as a whole, that have serious artistic significance, or works of anthropological significance, or materials used in science courses, including but not limited to materials used in biology, anatomy, physiology, and sexual education classes shall not be deemed to be within the foregoing definition.

19. The term "student" is not defined in § 573.550 or Chapter 573.

### *Application of the Statute*

20. The provision of obscene and pornographic materials to minors is—and was when § 573.550 was drafted and passed into law—already prohibited (and criminalized) by Missouri and federal law. *See* Ch. 573 (Pornography and Related Offenses); *Ginsberg v. New York*, 390 U.S. 629, 646 (1968) (establishing obscenity standard for minors).

21. The Missouri Supreme Court "declared as early as 1896 that obscene publications are outside the scope of constitutionally protected speech." *State v. Simmer*, 772 S.W.2d 372,

---

Section 573.010(27) defines "[v]isual depiction" to include "undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image."

373 (Mo. banc 1989) (citing *State v. Van Wye*, 37 S.W. 938, 939 (1896) and affirming the constitutionality of a statue that prohibited "promoting obscenity").[4]

22. School districts in Missouri abide by school-board approved selection criteria for choosing appropriate library and curricular materials, including standards that prevent the selection of obscene materials.

23. Despite this, § 573.550 has been applied by school districts to order the removal of library and curricular materials that, pursuant to these standards, had been previously selected and included in school library collections.

24. There are 518 public school districts and over 2,400 public schools in Missouri, educating over 800,000 students.

25. There are over 600 private schools in Missouri, educating over 100,000 students.

26. Missouri's public-school districts employ over 17,000 administrative and supervisory personnel, among them, over 1,500 library professionals, including librarians, instructional media technologists, library supervisors, and instructional technology directors.

27. Missouri's public-school districts employ over 70,000 teachers.

28. Schools across Missouri have ordered the removal of hundreds of titles from library and classroom shelves because of and pursuant to § 573.500.

---

[4] *Simmer* referenced the definition of "obscene" in Chapter 573, which at the time was found in § 573.050(8): "any material or performance is obscene if: (a) Applying contemporary community standards, its predominant appeal is to prurient interest in sex; and (b) Taken as a whole with the average person applying contemporary community standards, it depicts or describes sexual conduct in a patently offensive way; and (c) Taken as a whole, it lacks serious literary, artistic, political or scientific value. Obscenity shall be judged with reference to its impact upon ordinary adults." 772 S.W.2d at 373. The last sentence is not included in the current definition of obscene found in § 573.010(11) and the phrasing of the other parts of the definition has been slightly modified as well. *See supra* note 2.

29. Schools ordering the removal of titles are disregarding § 573.500's exception for "works of art, when taken as a whole, that have serious artistic significance, or works of anthropological significance, or materials used in science courses, including but not limited to materials used in biology, anatomy, physiology, and sexual education classes."

30. As of November 15, 2022, approximately 300 titles were known to have been removed from Missouri school libraries and classrooms in direct reaction to the passage of § 573.550.

31. The Independence School District ordered the removal of at least 12 titles from school libraries because of and in response to § 573.550.

32. Raytown Quality Schools ordered removal of at least 3 titles from school libraries because of and in response to § 573.550.

33. St. Louis area schools ordered the removal of close to 100 titles from school libraries because of and in response to § 573.550.

34. Many of the titles removed from Missouri schools are authored by or are about individuals who are minorities and/or identify as LGBTQ+.

35. Missouri schools have not only ordered the removal of many graphic novels because of § 573.550, but also human anatomy books and Holocaust history books.

36. Although school districts typically have policies and procedures in place for reviewing challenges to library materials, schools effected removals pursuant to § 573.550 without following these policies and procedures.

37. Throughout Missouri, § 573.550 has caused and continues to cause fear of criminal penalties and employment repercussions among librarians, educators, administrators,

Defendant's Exhibit A

Electronically Filed - Jackson - Kansas City - February 16, 2023 - 09:40 PM

and others—including parents—who may be subject to the law's penalties because of their affiliation with schools.

38. The uncertainty caused by § 573.550 has caused library professionals, educators, and administrators to self-censor when they consider the selection and retention of materials and titles for library and curricular collections.

39. The removal of books pursuant to § 573.550 disregards students' constitutional rights to access ideas and information.

40. Subject 573.550 could subject a parent who is a school employee to criminal prosecution for providing books or other materials to her own children or their friends who are students even if this is done in the privacy of her own home because the law places no limitations on when and where it applies.

41. The term "student" is not defined in § 573.550, and the same restrictions therefore apply to a five-year-old kindergartener and an eighteen-year-old senior.

42. Section 573.550 also does not limit its application to visuals in books and applies equally to, among other things, photographs, pictures, paintings, sculptures, films, and computer-generated images.

43. Section 573.550 does not limit itself to school libraries and applies equally to classrooms and books brought into the school by invited guests from their own personal home libraries.

44. Section 573.550 infers that trained library professionals are not capable of curating a library collection that eliminates obscene materials.

*Harms to Plaintiffs and Plaintiffs' members*

45. Library professionals, including members of both MASL and MLA, have significant training and education, including in the area of selecting age-appropriate material for libraries.

46. Encouraging libraries to include a wide variety of materials on diverse subject areas, written by diverse authors, and depicting diverse characters is central to the mission and purpose of both MASL and MLA.

47. School districts following their board-approved reconsideration of material policies and/or challenge procedures that apply to materials carefully selected for library collections is also central to the mission and purpose of both MASL and MLA.

48. MASL's committees include its Intellectual Freedom Committee, which recommends steps for safeguarding the rights of library users, libraries, and library media specialists, in accordance with speech rights and the Library Bill of Rights as adopted by the American Library Association Council.

49. MASL's membership includes library media specialists who are employees of both public and private schools in Missouri.

50. A majority of MASL's members work in public schools.

51. MASL's membership includes library media specialists who are also parents themselves and have children attending Missouri schools.

52. MASL provides professional development opportunities, office hours, annual conferences, book festivals, and book clubs for its members.

53. Since the passage of § 573.550, MASL has had to divert time and resources from other organizational efforts, including its regularly planned professional development, to respond to questions and concerns from members about the law.

Electronically Filed - Jackson - Kansas City - February 16, 2023 - 09:40 PM

Defendant's Exhibit A

54. MASL's volunteer leadership team and office management staff spent upwards of twenty hours a week between August and September responding to inquiries, holding educational meetings with members, and addressing the many questions presented to them about the passage and implementation of § 573.550. MASL volunteer leadership continues to spend time each week responding to inquiries, holding educational meetings with members, and addressing the many questions presented to them about the passage and implementation of § 573.550. This time would otherwise have been spent on other initiatives, education, and advocacy efforts in furtherance of their mission.

55. The uncertainty the law creates for school professionals has caused MASL's leadership to continue to spend time answering questions about the application of the law for its members—members who fear prosecution for violating the law and are now self-censoring their own school library collections.

56. MASL has created and presented information and education to members related to § 573.550, including through online Zoom meetings and written guidance on minimizing risks, reacting to challenges of library materials, and protecting their personal safety.

57. MASL leadership has been asked to give and has given presentations related to § 573.550 and the broader campaign of book challenges across Missouri, including at conferences of the Missouri Association of Secondary School Principals and Missouri School Board Association.

58. Section 573.550 has required MASL to draft statements and respond to media requests concerning the law.

59. In addition to self-censorship, MASL members have been ordered by school administrators to remove books from the library that MASL members (who are all library

10

Case 4:23-cv-00536-FJG   Document 1-2   Filed 07/28/23   Page 10 of 19

) do not believe contain any visual depictions that fit within the definition of "explicit sexual material."

60. For example, MASL members are reluctant now to add new art books or books that reflect diversity to library collections for fear that they will be deemed to have visuals that are "explicit sexual material" by others and therefore subject the library staff and others to criminal prosecution.

61. Many MASL members were asked to look through entire collections of titles for visuals that could be deemed "explicit sexual material" and have been ordered to remove certain titles yet have not received any additional guidance on the application of § 573.550 and how it applies to any of the removed titles.

62. MASL members have spent a significant amount of time, many hours and even days, closely examining their library collections in order to comply with administrative directives and because of their own fear of prosecution for violating § 573.550.

63. MASL members have experienced significant stress because of § 573.550, the message it sends that they are not properly selecting material for their libraries, and the fear of being criminally prosecuted.

64. Books in schools where MASL members are affiliated have both been permanently removed pursuant to school district directives as well as ordered removed pending review under § 573.550 and, in some schools, removals pending review have been indefinite with no indication of when the books will be either returned or permanently removed.

65. MLA members work in public libraries, academic libraries, as well as school libraries serving students in elementary and secondary education classes.

11
Case 4:23-cv-00536-FJG   Document 1-2   Filed 07/28/23   Page 11 of 19

Electronically Filed - Jackson - Kansas City - February 16, 2023 - 09:40 PM

Defendant's Exhibit A

66. MLA's membership includes library media specialists and library professionals who are also parents and have children who are students in Missouri schools.

67. MLA members who do not work directly in public-school libraries often partner with elementary and secondary school libraries and library professionals. In this capacity, MLA members are often invited into schools to work with and speak to students.

68. For example, MLA members provide bookmobile services to schools and childcare centers.

69. MLA members also work at libraries affiliated with community colleges or universities that assist local secondary schools when students want to take classes for college credit while still in high school.

70. MLA members educate and work with student teachers.

71. MLA's committees include its Intellectual Freedom Committee, which monitors legislation and other efforts that affect speech rights, encourages libraries to protect those rights, supports and implements the MLA statement on Intellectual Freedom, and assists and supports MLA members with intellectual freedom concerns.

72. Because of § 573.550, MLA has diverted resources from its regular education and advocacy efforts in support of its members, including providing guidance on the law and responding to questions from members related to inquiries they receive about books purportedly affected by the law.

73. MLA leadership received requests for guidance on the application of § 573.550 from library professionals throughout the state. Questions presented to MLA leadership centered on how the law applied and whether the members could avoid being prosecuted and going to jail.

12
Case 4:23-cv-00536-FJG   Document 1-2   Filed 07/28/23   Page 12 of 19

Electronically Filed - Jackson - Kansas City - February 16, 2023 - 09:40 PM

Defendant's Exhibit A

Members also asked what specific books would be affected and if they were required to remove books.

74. In response to their members' reaction to the law and because MLA leadership wanted to educate its members, they expanded an Intellectual Freedom workshop for library workers in order to specifically address the application of § 573.550.

75. In the past, MLA would present one Intellectual Freedom workshop for members at an annual conference and repeat it approximately three to four other times in a year upon request. The workshop was usually three hours long.

76. The workshop was reformatted for online delivery due to increased demand and MLA created shorter versions of the workshop addressing the law. MLA leadership has been consistently adding in new examples of book challenges and book removals as they continue to occur throughout the state.

77. Because of the increase in a demand for trainings and workshops, MLA leadership had to request additional help from volunteers to put on presentations.

78. In the past, the three-part workshop discussed the history of intellectual freedom in libraries and institutions, individual library policies, and tools for de-escalating and responding to book challenges. Since the passage of § 573.550 and the related membership concerns and requests for assistance, MLA leadership has created a new section at the end of its regular three-part workshop to specifically address how challenges made pursuant to the law may be received and responded to.

79. In 2022, one MLA member presented the new workshop twelve times himself. Other member-presenters have traveled to locations more than twenty-five times collectively to present the workshop.

Defendant's Exhibit A

80. MLA's workshop presentations have increased at least fivefold upon anticipation and since the passage of § 573.550.

81. After each MLA presentation concludes, the presenters must often stay to answer additional questions about the application of the law.

82. MLA Leadership has also responded to media requests about § 573.550.

83. Members of MASL and MLA fear prosecution for failure to comply with § 573.550.

84. Members of MASL and MLA risk being prosecuted both while acting in their official capacities but also outside of that context, including at home with their own children who are students, because § 573.550 is not limited to actions taken in one's official capacity, actions inside schools, or actions during school hours.

85. Members of MASL and MLA are not certain how to comply with § 573.550 because it is an unclear law that leads to discriminatory and arbitrary enforcement.

## DEFENDANT CLASS ALLEGATIONS

86. Defendant Baker is a member of the class of prosecuting attorneys in Missouri.

87. Defendant Baker and all prosecuting attorneys throughout the State have the authority to criminally enforce § 573.550 and prosecute any alleged offenders.

88. Any violation of § 573.550 is a class A misdemeanor.

89. A Class A misdemeanor is punishable by up to one year of imprisonment and/or a fine of up to $2,000. §§ 558.002; 558.011.

90. There are 114 counties in Missouri and 115 prosecuting attorney offices, including the Prosecuting Attorney for the City of St. Louis (a city not within a county), which

Electronically Filed - Jackson - Kansas City - February 16, 2023 - 09:40 PM

Defendant's Exhibit A

makes the members of the prospective defendant class so numerous that joinder of all members of the class would be impracticable.

91. Section 573.550 requires the prospective defendant class to engage in conduct implicating Plaintiffs' rights such that there is a common nucleus of operative facts and law.

92. Any defenses that could be raised by Defendant Baker would have the same essential characteristics as the defenses of the defendant class at large.

93. Defendant Baker will fairly and adequately protect the interests of the prospective defendant class.

94. Defendant Baker and members of the prospective defendant class have the authority and responsibility to enforce § 573.550 within their respective jurisdictions and, in doing so, will be acting under color of law.

## CLAIMS FOR RELIEF

### COUNT I

*Violation of Article I, Section 10 of the Missouri Constitution*
*Void for Vagueness*

95. Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

96. Article I, Section 10 of the Missouri Constitution provides "[t]hat no person shall be deprived of life, liberty or property without due process of law."

97. "'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.'" *State v. Faruqi*, 344 S.W.3d 193, 199 (Mo. banc 2011) (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939).

Electronically Filed - Jackson - Kansas City - February 16, 2023 - 09:40 PM

Defendant's Exhibit A

Electronically Filed - Jackson - Kansas City - February 16, 2023 - 09:40 PM

98. This due process guarantee requires that a statute "give ordinary people fair notice of the conduct it punishes" and not be "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see, e.g.*, *State v. Young*, 695 S.W.2d 882, 884 (Mo. banc 1985).

99. "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

100. The vagueness inquiry is stricter if the statute in question "threatens to inhibit the exercise of constitutionally protected rights," imposes criminal penalties, lacks a scienter requirement, or is noneconomic in nature. *State ex rel. Nixon v. Telco Directory Publ'g*, 863 S.W.2d 596, 600 (Mo. banc 1993) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982)).

101. Section 573.550 threatens to inhibit the exercise of constitutionally protected rights of speech and expression, imposes criminal penalties of up to one year of imprisonment and up to a $2,000 fine, and is noneconomic in nature.

102. Missouri school districts have applied § 573.550 broadly, ordering the removal of hundreds of titles that previously had been deemed appropriate by library professionals and school administrators, demonstrating uncertainty as to what materials are covered.

103. Because § 573.550 includes any visual image, photograph, film, video, picture, or computer-generated image, Plaintiffs and their members face the risk of prosecution for providing students with electronic access to internet resources and materials, for example by providing a laptop, tablet, or electronic access to library collections.

Defendant's Exhibit A

104. Because § 573.550 is not limited to actions taken in an official capacity, Plaintiffs and their members face the risk of prosecution for activities outside of schools.

105. Plaintiffs' and their members' inability to predict what materials and activities are covered by § 573.550 forces them to substantially alter or curtail their speech and conduct to minimize the risk of prosecution.

106. Removing books from school libraries, which Plaintiffs have been forced to do in response to § 573.550, also violates students' right to access ideas and information. *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (plurality).

107. Plaintiffs and their members are therefore forced to choose between violating the rights of students by removing access to materials or risking prosecution under § 573.550.

108. The law fails to provide ordinary people, including Plaintiffs, with "fair notice of the conduct [§573.550] punish[es]," and thus "invites arbitrary enforcement." *Johnson*, 576 U.S. at 595.

109. Section 573.550 is unconstitutionally vague under the Missouri Constitution's Due Process Clause.

**COUNT II**

*Violation of Article I, Section 8 of the Missouri Constitution*
*Overbreadth*

110. Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

111. Mo. Const. art. 1, § 8 provides "[t]hat no law shall be passed impairing the freedom of speech, no matter by what means communicated: that every person shall be free to say, write or publish, or otherwise communicate whatever he will on any subject."

112. Section 573.550(b)(2) covers a wide swath of individuals who wish to exercise their rights of speech, expression, and association, including individuals who are not employed directly by Missouri schools.

113. Section 573.550 does not differentiate between actions taken by individuals in their official capacity during school hours and actions taken in their personal capacity, outside of the school, or outside of school hours.

114. Because § 573.550 can and has been interpreted as requiring the removal of hundreds of titles and has imposed the threat of criminal penalties on thousands of people "affiliated" with Missouri's schools if they provide certain material, which in practice has included non-sexually explicit materials previously approved and included in library collections, it is unconstitutionally overbroad.

## COUNT III
### *Declaratory Judgment pursuant to § 527.010*

115. Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

116. This claim is brought as an alternative to Counts I and II.

117. This Court has the power to issue a declaratory judgment where a party's legal rights under a statute are in question. § 527.020.

118. The language and application of § 573.550 make it unclear how it applies to Plaintiffs and their members, which presents a justiciable controversy regarding how and when Plaintiffs will be subject to regulation and prosecution under the statute.

119. If § 573.550 is not declared unconstitutional, declaratory relief clarifying the statute's limited scope is necessary to avoid the removal of materials that are not obscene as well

as to ensure that materials already removed improperly be returned to library and school collections.

WHEREFORE, Plaintiffs pray this Court:

A. Enter declaratory judgment that § 573.550 is unconstitutional facially and as applied and may not be enforced;

B. Issue a permanent injunction prohibiting the enforcement of § 573.550;

C. Alternatively, enter declaratory judgment defining and clarifying how and when § 573.550 applies; and

D. Allow such other and further relief as is proper under the circumstances.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Jessie Steffan, #64861
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
arothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278
ACLU of Missouri Foundation
406 W. 34th Street, Suite 420
Kansas City, MO 64111
Phone: (816) 470-9938
gwilcox@aclu-mo.org

Attorney for Plaintiffs

Electronically Filed - Jackson - Kansas City - February 16, 2023 - 09:40 PM

Defendant's Exhibit A